```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF PUERTO RICO
 2   _____

 3   UNITED STATES OF AMERICA,          CASE NO.: 20-CR-382-RAM

 4            Plaintiff,

 5   v.                                 Hato Rey, Puerto Rico

 6   (3) JOSE RAUL DOTEL,               December 12, 2023

 7            Defendant.                Tuesday - 10:50 a.m.

 8   _____

 9                     SENTENCING PROCEEDINGS
         BEFORE THE HONORABLE CHIEF JUDGE RAUL ARIAS-MARXUACH
10            UNITED STATES DISTRICT COURT OF PUERTO RICO
     _____
11   APPEARANCES:

12   For the United States

13   AUSA Hector Siaca-Flores
     United States Attorney's Office
14   350 Carlos Chardon Ave.
     Suite 1201
15   San Juan, PR 00918

16   For the Defendant Dotel (3)

17   Juan F. Matos-De-Juan, Esquire
     Matos de Juan Law Office
18   255 Ponce De Leon Ave.
     MCS Plaza, Suite 1210
19   San Juan, PR 00917
     787-509-2335
20   Email: matos@sgmr.net

21   Courtroom Deputy:

22   Ms. Natassia Z. Ochoa

23

24                    P-R-O-C-E-E-D-I-N-G-S

25   [10:50 a.m.]
```

1    **COURTROOM DEPUTY:**  Criminal Case Number 20-382,
2    United States of America versus Jose Raul Dotel for
3    Sentencing Hearing.
4           On behalf of the Government is Hector Siaca-Flores.
5           On behalf of the Defendant is Juan Matos-De-Juan.
6           The Defendant is present and being assisted by a
7    certified Court Interpreter.
8           **THE COURT:**  Good morning, counsel.  Please enter
9    your appearances for the record.
10          **MR. SIACA-FLORES:**  Good morning, Your Honor.  AUSA
11   Hector Siaca-Flores for the Government.  We are ready to
12   proceed.
13          **MR. MATOS DE JUAN:**  Good morning, Judge.  Juan Matos
14   De Juan on behalf of Mr. Dotel.
15          **THE COURT:**  Mr. Dotel, can you hear the
16   interpretation of the proceedings through the headset?
17          **THE DEFENDANT:**  Yes.
18          **THE COURT:**  Mr. Matos, did you discuss, in Spanish,
19   the full contents of the Presentence Investigation Report
20   with Mr. Dotel before today?
21          **MR. MATOS DE JUAN:**  I have, Judge.
22          **THE COURT:**  Mr. Dotel, have you understood your
23   attorney's explanations concerning your case?
24          **THE DEFENDANT:**  Yes.
25          **THE COURT:**  Do you have any doubts concerning the

1  Probation Officer's report?
2  **THE DEFENDANT:** No.
3  **THE COURT:** Mr. Matos, do you have any objections to
4  the Presentence Investigation Report?
5  **MR. MATOS DE JUAN:** I do not have any objections to
6  the Presentence Investigation Report, Judge.
7  **THE COURT:** AUSA Siaca, do you have any objections
8  to the Presentence Investigation Report?
9  **MR. SIACA-FLORES:** No objections, Your Honor.
10  **THE COURT:** This is a type B plea agreement,
11  correct?
12  **MR. MATOS DE JUAN:** Yes, Your Honor.
13  **THE COURT:** Mr. Matos, do you wish to make a
14  statement before I proceed to sentence?
15  **MR. MATOS DE JUAN:** Judge, first of all, I would
16  like to introduce you to Mr. Dotel's family who is here
17  because similar to the last sentence, it's rare that you have
18  a family that stays.  This family in particular, I can tell
19  you for a fact that they have stuck with him because they
20  have called me pretty much every other day, and they are
21  always paying attention to what is going on with Mr. Dotel.
22          Here is one of his daughters that I think is laying
23  on the floor of your courtroom.  He has four kids.  I'll be
24  honest with you, Judge, and he is going to go into this more
25  in his allocution.  It really struck to me.

1         Usually, let's just say when they ask, what did you
2    learn about this, well, let's say they follow a pattern of
3    the conversation.  He said something that really struck me.
4    "I have never been so humiliated in my life as being arrested
5    in front of my kids."  That struck me because I have to admit
6    most of my clients aren't exactly active parents.  Most of my
7    clients leave kids along the road --
8         **THE COURT:**  That's a good image.  I get it.
9         **MR. MATOS DE JUAN:**  Yes.  Not him.  He is in Guayama
10   which is a hassle to visit because now they only allow you to
11   visit them in the mornings.  Every time I go to visit my
12   client, usually the conversation starts with, "Have you
13   spoken with my wife."  "Did she call you?"  "How is my
14   family?"  That's not the usual question my clients start
15   with.  They usually start with, "What have you done for me?"
16   Most of my conversations with him start with, "How are they?"
17        My client is in Guayama.  There is limited library
18   in Guaynabo.  Guayama has none.  Guaynabo has some limited,
19   you know, you are in the unit most of the day.  In Guayama,
20   you are within your cell most of the day.  While that is
21   pretty hard on the inmate because, you know, staring at four
22   walls which are barely this wide (indicating) is far from
23   fun.
24        It has provided my client a lot of time for
25   introspection, introspection that he has used.  Like I said,

1  "What have you learned?"  "The most humiliating thing in my
2  life was being arrested in front of my kid."  That's the
3  answer from a person that has looked inside and realized
4  where he has screwed up, and not only that, where his
5  priorities are supposed to be.
6       Similar to the prior case I discussed the case with
7  the prosecution in charge which is not Mr. Siaca and I say
8  that because I don't want to place upon him any kind of
9  knowledge of the plea conversations.  I don't want to place
10 upon him anything.  The plea is 135.
11      **THE COURT:**  A joint recommendation.
12      **MR. MATOS DE JUAN:**  A joint recommendation.
13      My client has asked me to tell you, and I don't
14 think this is reasonable, and I address this to counsel for
15 the Government.  I think 120 will be adequate to recognize
16 the rehabilitative process to which he has come.  I don't
17 think it's a breach of the plea because I discussed this with
18 the Government and there is a joint recommendation.  There
19 is.
20      Having said that, Judge, I will request you to hear
21 my client during his allocution because he can more
22 eloquently explain.  It's hard to describe -- it's hard for
23 me to describe for him something that he only personally has
24 experienced.  I request for the Court to listen to my client
25 before you impose a sentence and impose a sentence as agreed

1  by the parties.
2              **THE COURT:**  Thank you.
3          Mr. Dotel, do you wish to make a statement?
4              **THE DEFENDANT:**  Yes, Judge.
5              **THE COURT:**  Please go ahead.
6              **THE DEFENDANT:**  Good day.  I would like to apologize
7  to my wife, my family, my daughter, my mom, my friends, to
8  those people that know me.  The shame that I went through
9  upon being arrested in the presence of my wife, my daughter
10 and my mom, I did not think about how bad I would be feeling
11 as a person by taking a mistake in decision.
12         The Judge will never see me here again because the
13 time I have been confined to Guayama 1000, that's a max
14 security prison where I spend 22 hours in the jail where I
15 eat.  Inside my cell everything is done.  That is being in
16 jail.  It shows you not to play around with life whenever you
17 have an opportunity of becoming a better person.
18         What I am asking is for the opportunity to reinvent
19 myself with my daughter specifically and to be able to go to
20 an institution where I can work at and to draw a benefit from
21 this situation I am currently in and being able to be again
22 with my family and also to be able to thank the Honorable
23 Judge Arias-Marxuach for allowing me to express myself to my
24 counsel for the representation that he did for me and that
25 God and you, yourself, tell me what I do deserve.

1              Thank you very much.  Have a good day.

2          **THE COURT:**  Thank you, Mr. Dotel.

3          AUSA Siaca?

4          **MR. SIACA-FLORES:**  Yes, Your Honor, AUSA Siaca for the record.

5          At this juncture, it is the position of the Government to request the imposition of a sentence of 135 months of imprisonment.  That is not only what was calculated in the PSR, the lower end of the range calculated in the PSR, but it was the lower end calculated in the plea agreement. We understand that it is sufficient but not greater and taking into consideration the offense to which he admitted guilty which was possessing with intent to distribute 650 kilograms of cocaine, Your Honor.

15         We understand that 135 months of imprisonment is sufficient but not greater than necessary in this case. That's the position of the Government.

18         **THE COURT:**  Thank you, AUSA Siaca.

19         Mr. Dotel, I am baffled as to why you are here in the sense that you had several brushes with the law until you were 29 and you did time for narcotics and money laundering offenses.  So you know what hard time is.

23         Then, at approximately 50 years of age with that family you have on the back bench, you decided to get involved in this.  It is a tragedy.  I will sentence you per

1   the plea agreement to 135 months which is the low end of the
2   range, so I am not doing you an injustice.  That is a
3   sentence that is just and not greater than necessary under
4   the circumstances of this case.
5           What I want to leave you with is the following:  You
6   told me you wanted to improve yourself and set an example for
7   your family, specifically for your daughters.  You should
8   have included your wife so as to avoid trouble with another
9   authority, but you can work that out later.
10          The point is from now until you are 62, you are
11  going to be in custody and you have to find a way to make
12  good on that promise to your family, making use of whatever
13  work and opportunities that are afforded to you so that when
14  you return to your family, it is for good.  So I do wish you
15  the best of luck and will proceed to sentence.
16          On September 11, 2023, the Defendant Jose Raul Dotel
17  plead guilty to Count 1 of the indictment filed in Criminal
18  Case 20-382 pursuant to a plea agreement.
19          Count 1 charges a violation of Title 46, United
20  States Code Section 70503(a)(1) and Title 21, United States
21  Code Section 960(b) conspiracy to possess with intent to
22  distribute a controlled substance on board a vessel subject
23  to the jurisdiction of the United States, a class A felony.
24          The November 1, 2023 edition of the United States
25  Sentencing Guidelines has been used to apply the advisory

1  guideline adjustments pursuant to the provisions of Guideline
2  Section 1B1.11(a).
3         The Guideline for a violation of Title 46 United
4  States Code Section 70503(a)(1) is Guideline Section 2D1.1.
5         The base offense level for an offense involving more
6  than 450 kilograms of cocaine is 38 pursuant to Guideline
7  Sections 2D1.1(a)(5) and (c)(1).
8         The Defendant meets the criteria in Guideline
9  Section 4C1.1 thru 10 for certain zero point offenders and,
10 as such, two levels are reduced pursuant to 4C1.1(a).
11        Because he has shown acceptance of responsibility
12 for his participation in the offense, the offense level is
13 reduced by three levels pursuant to guideline sections
14 3E1.1(a) and (b).  There are no other applicable guideline
15 adjustments.
16        Based on a total offense level of 33 and a criminal
17 history category of one, the guideline imprisonment range for
18 this offense is from 135 to 168 months with a fine range of
19 $35,000 to $10 million plus a supervised release term of, at
20 least, five years.
21        The Court has reviewed the advisory guideline
22 calculations and finds that the Presentence Investigation
23 Report has adequately applied the guideline computations
24 which satisfactorily reflect the components of this offense
25 by considering its nature and circumstances and the Court has

1  considered the other sentencing factors in Title 18 U.S.C.
2  §3553(a).
3           Mr. Dotel is a 54-year-old citizen and resident of
4  Carolina, Puerto Rico who has four dependents.  The Defendant
5  completed a high school education and was employed at Los
6  Duros Tire Center, in Carolina, Puerto Rico, prior to the
7  instant arrest.
8           The Defendant reported being physically healthy but
9  noted a history of mental health treatment.
10          Further, he has reported history of using marijuana
11 and have experimented with cocaine was a teen.
12          This is his fifth known arrest and conviction.
13          Lastly, the Court has taken into consideration the
14 elements of the offense and Mr. Dotel's participation in the
15 same.
16          Specifically, he took part in a drug smuggling
17 venture with other individuals which involved months of
18 coordination in which he took part, and an at-sea transfer
19 with approximately 650 kilograms cocaine for delivery in
20 Puerto Rico.
21          The Court has also considered all other Title 18
22 Section §3553 factors including the elements of the offense,
23 the plea agreement between the parties, and the need to
24 promote respect for the law and protect the public from
25 further crimes by the Defendant as well as address the issues

```
 1  of deterrence and punishment.
 2          The Court deems that a sentence at the lower end of
 3  the guideline range is a sentence that is just and not
 4  greater than necessary.
 5          Therefore, it is the judgment of this Court that
 6  Mr. Jose Dotel is hereby committed to the custody of the
 7  Bureau of Prisons to be imprisoned for a term of 135 months.
 8          Upon release from confinement, the Defendant shall
 9  be placed on supervised release for a term of five years
10  under the following terms and conditions:
11          The Defendant shall not commit another federal,
12  state or local crime and shall observe the standard
13  conditions of supervised release recommended by the United
14  States Sentencing Commission and adopted by this Court.
15          The Defendant shall not unlawfully possess
16  controlled substances.
17          The Defendant shall refrain from possessing
18  firearms, destructive devices and other dangerous weapons.
19          The Defendant shall provide the U.S. Probation
20  Officer access to any financial information upon request.
21          The Defendant shall submit his person, property,
22  house, vehicle, papers, computers as defined in Title 18,
23  Section 1030(e)(1), other electronic communication or data
24  storage devices and media to a search conducted by a United
25  States Probation Officer, at a reasonable time and in a
```

1  reasonable manner, based upon reasonable suspicion of
2  contraband or evidence of a violation of a condition of
3  release.  Failure to submit to a search, may be grounds for
4  revocation of release.
5         The Defendant shall warn any other occupants that
6  the premise may be subject to searches pursuant to this
7  condition.
8         The Defendant shall participate in an approved
9  substance abuse treatment program.
10        The Defendant shall cooperate in the collection of a
11 DNA sample as a directed by a Probation Officer pursuant to
12 the revised DNA collection requirements and Title 18, United
13 States Code Section 3563(a)(9).
14        Defendant shall refrain from the unlawful use of
15 controlled substances and submit to a drug test within 15
16 days of release, thereafter, submit to random drug testing no
17 less than three samples during the supervision period and not
18 to exceed 104 samples per year in accordance with the Drug
19 After Care Program Policy of the U.S. Probation Officer
20 approved by this Court.  If deemed necessary, the treatment
21 will be arranged by the officer in consultation with the
22 treatment provider.
23        The Defendant is required to contribute to the cost
24 of the services rendered, that is co-payment, in the amount
25 arranged by the Probation Officer based on the availability

1  to pay or the availability of third-party payment.
2         The Court finds that the conditions imposed are
3  reasonably related to the offense of conviction and to the
4  sentencing factors in Title 18, Section §3553.
5         Further, the Court finds that the condition imposed
6  are pertinent Sentencing Commission pursuant to Title 28
7  Section 994(a) and there is no greater deprivation of liberty
8  than what is reasonably necessary to fulfill all the
9  sentencing objectives including rehabilitation, positive
10 reintegration into community, just punishment and deterrence.
11        Having considered Mr. Dotel's financial condition
12 and the lengthy sentence, a fine is not imposed; however, a
13 special monetary assessment in the amount of $100 is imposed
14 as required by the law.
15        The Defendant has agreed to forfeit all rights,
16 title and interests in all aspects which are subject to
17 forfeit as outlined in paragraph 24 of the written plea
18 agreement.
19        Mr. Dotel, you can appeal your conviction if you
20 believe that your guilty plea was somehow unlawful or
21 involuntary or if there is some other fundamental defect in
22 the proceedings that was not waived by your guilty plea.  You
23 also have a statutory right to appeal your sentence under
24 certain circumstances, particularly if you think the sentence
25 is contrary to law.

1           With few exceptions, any notice of appeal must be
2  filed within 14 days of judgment being entered in your case.
3  If you are unable to pay the cost of an appeal, you may apply
4  for leave to appeal in forma pauperis, that is seek
5  permission to appeal as an indigent person.  If you so
6  request, the Clerk of the Court will prepare and file a
7  notice of appeal on your behalf.
8           Mr. Matos, is there any request regarding
9  designation?
10          **MR. MATOS DE JUAN:**  Pensacola.
11          **THE COURT:**  Any request regarding courses or
12  training.
13          **MR. MATOS DE JUAN:**  He will consent to whatever is
14  available for him.
15          **THE COURT:**  The Court instructs that he be afforded
16  courses in English as a second language.
17          AUSA Siaca, any counts of the indictment to dismiss?
18          **MR. SIACA-FLORES:**  Yes, Your Honor, the Government
19  moves to dismiss any remaining counts.
20          **THE COURT:**  Granted.  Leave to withdraw is also
21  granted.
22          **MR. MATOS DE JUAN:**  Maybe I misheard.  I think the
23  Court made reference that he was part of the at-sea transfer.
24          **THE COURT:**  No, no, no, "which resulted in an at-sea
25  transfer."  I am aware that's part of a land-based

1  conspiracy.
2  **MR. MATOS DE JUAN:** I wanted to make sure that the
3  Court had the correct information.
4  **THE COURT:** No, no, no, I am clear as to what his
5  role was.
6  **MR. MATOS DE JUAN:** Aside from that, Judge, the
7  Defense has no further requests.
8  **THE COURT:** Then leave to withdraw is granted.
9  (Whereupon, proceedings were adjourned.)

24 UNITED STATES DISTRICT COURT )
   DISTRICT   OF   PUERTO RICO )
25

Robin Marie Dispenzieri, Official Court Reporter
United States District Court of Puerto Rico

REPORTER'S CERTIFICATE

I, Robin Marie Dispenzieri, Federal Official Court Reporter for the United States District Court for the District of Puerto Rico, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct computer-aided transcript of proceedings had in the numbered cause on the date herein set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.

Dated this 20th day of October 2024.

_____
**Robin Marie Dispenzieri, RPR, OCR**
**Official Court Reporter**
**United States District Court of Puerto Rico**
**150 Av. Carlos E. Chardón**
**San Juan, Puerto Rico   00918**
*Rdispenzieri@gmail.com*